UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
--------------------------------------------------------
                                                                :
THOMAS L. PROCACCIO,                     :
dba PRO GUN & SPORTS SUPPLY,      :       CASE NO. 5:05-MC-0083
                                                                :
            Petitioner,                              :
                                                                :       ORDER AND OPINION
     vs.                                                    :       [Resolving Docs. 1, 2, 4, 13]
                                                                :
MARCIA LAMBERT, DIRECTOR,       :
INDUS. OPERATIONS, CLEVELAND  :
DIV., BUREAU OF ALCOHOL,             :
TOBACCO, AND FIREARMS, AND    :
EXPLOSIVES,                                      :
                                                                :
            Respondent.                            :
                                                                :
--------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Thomas Procaccio petitions for review of the Bureau of Alcohol, Tobacco, Firearms, and Explosives' ("ATF") decision revoking his license to sell firearms [Doc. 1]. The Court also reviews the Respondent's motion for summary judgment [Doc. 2]. For the reasons described below, the Court finds that ATF's actions revoking Procaccio's license were authorized. The Court therefore GRANTS ATF's motion for summary judgment and DENIES Procaccio's petition.

## I. Background

In February 1986, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") issued Petitioner Thomas Procaccio a license to sell firearms. (Mot. Dismiss 4.) Since then, the Petitioner has operated Pro Gun and Sports Supply ("Pro Gun") in Cuyahoga Falls, Ohio. (Pet. 2.) Since issuing the license, ATF agents have inspected Pro Gun four times to ensure compliance with ATF procedures. (Mot. Dismiss 4-12.) At each inspection, the agents cited the Petitioner for numerous

-1-

Case No. 5:05-MC-0083
Gwin, J.

record-keeping violations.[1] (*Id.*)  After each inspection, the agents issued a report to the Petitioner detailing the citations and gave Petitioner Procaccio an opportunity to discuss the problems with the investigating agents.  (*Id.* at 12.)

In May 2004, the Petitioner applied to renew his firearm dealer license.  (Pet. 4.)  On May 22, 2004, ATF notified the Petitioner that his application was on hold during the pendency of assault charges then pending against him in state court in Cuyahoga Falls.  (*Id.* at Ex. 2.)  Procaccio was later acquitted of those charges, and on June 7, 2004, counsel for the Petitioner sent ATF a copy of the Petitioner's acquittal record in that case.  (*Id.* at Ex. 3.)  Nevertheless, in late 2004 or early 2005, ATF notified the Petitioner that it intended to revoke his sales license for wilfully violating ATF's record-keeping regulations.  (Mot. Dismiss 12.)

On September 30, 2005, the Petitioner filed the current petition seeking *de novo* review of the ATF's decision to revoke his sales license (Pet.).  On November 30, 2005, ATF responded with a motion for summary judgment.  The Petitioner has filed a memorandum opposing the summary judgment motion.  (Pet. Reply Br.)

---

[1] ATF conducted inspections in March 1993, September 1994, June-July 2000, and March 2003. (Mot. Dismiss 4-11.) The Petitioner was cited for incomplete Forms 4473 at each inspection. *Id.* Additionally, the inspectors found that the Petitioner's log book was incomplete on three occasions, that he was not filling out Forms 3310.4 as required on two occasions, and that he was failing to provide required information to purchasers on one occasion. *Id.* Form 4473 tracks sales and transfers of firearms, and Form 3310.4 records multiple sales to the same individual within a short time period. *Id.* at 2-4.  These forms and disclosures are required by ATF regulation. *See generally* 27 C.F.R. §§ 478.100-03, 478.121-26 (2006).

Case No. 5:05-MC-0083
Gwin, J.

## II. Legal Standards

### A. Scope of *De Novo* Review

When ATF revokes a license to sell firearms under the Gun Control Act of 1968, 18 U.S.C. §§ 921 *et seq.* ("CGA"), the licensee is entitled to an agency hearing. 18 U.S.C. § 923(f)(2). Upon petition, federal courts may exercise *de novo* review of adverse determinations of ATF's authorization to take its chosen actions. *Id.* § 923(f)(3); *Rich v. United States*, 383 F. Supp. 797, 798-99 (D.C. Ohio 1974) ("A determination 'de novo' places the review in an entirely different posture than a review of administrative decisions generally. '. . . the decision of the Secretary is not clothed with any presumption of correctness or other advantage." (quoting *Weidner v. Kennedy*, 309 F. Supp. 1018, 1019 (C.D. Cal.1971)). A reviewing court may exercise discretion to "consider any evidence submitted by the parties." *See, e.g.*, *Stein's Inc. v. Blumenthal*, 649 F.2d 463, 467 (7th Cir. 1980) (quoting 18 U.S.C. § 923(f)(2)). The ATF's decision and factual determinations receive whatever weight the court feels is appropriate. *See id.*

There is some dispute over how this unique form of *de novo* review should operate. The Petitioner argues that under this *de novo* review, the GCA guarantees should preclude the Court from considering the administrative record. (Pet. Reply Br. 11.) He argues that the Court would violate Congressional intent behind the GCA and the FOPA if it considered uncontested violations from the administrative record as fact. *Id.*

The Petitioner's reading is incorrect. Title 18 of United States Code, section 923(f)(3) provides:

> The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business *for a de novo judicial review* of such denial or revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding

-3-


Case No. 5:05-MC-0083
Gwin, J.

> whether or not such evidence was considered at the hearing held under paragraph (2). If the court decides that the Attorney General *was not authorized to deny the application or to revoke the license,* the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court.

18 U.S.C. § 923 (emphasis added). This language is somewhat uncertain regarding the scope of review. Section 923(f)(3) calls for "de novo judicial review," yet limits the Court to deciding only whether the Attorney General's decision "was not authorized." See *Pinion Enterprises, Inc. v. Ashcroft*, 371 F. Supp. 2d 1311, 1314-15 (N.D. Ala. 2005) ("T]he statute only allows the district court to reverse the Attorney General's decision if it finds "the Attorney General was not authorized to . . . revoke the license. . . . The language of § 923(f)(3) does not call upon this Court to decide whether it would revoke the license in it's own judgment, but whether all of the evidence presented is sufficient to justify the Attorney General's revocation of the license.")

This Court's *de novo* review, therefore, allows the Court to go beyond the evidence considered at the section 923(f)(2) hearing and to make an independent determination regarding whether the ATF decision was authorized. The Petitioner's interpretation, on the other hand, would require courts to conduct full discovery to reestablish the entire administrative record. Congress did not intend such duplicative and wasteful proceedings. Instead, the Court considers whether the Attorney General's revocation was authorized, not whether this Court would make the same decision if originally presented with the issue. With this standard in mind, the Court addresses the parties' substantive arguments.

**B. Summary Judgment Standard**

Summary judgment on a petition is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing the

Case No. 5:05-MC-0083
Gwin, J.

absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It is not sufficient for the non-moving party merely to show that there is some existence of doubt as to the material facts. *Id.*

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *National Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). Ultimately the court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

### III. Discussion

The Petitioner makes five substantive arguments. First, he says that his violations were "neither substantive nor willful" and did not result from indifference towards the record keeping obligations. (Pet. 5.) Second, he says that the ATF required forms that were complicated and that virtually all firearms retailers have inconsistent or incomplete records similar to those alleged by ATF in this case. (Pet. Reply Br. 3-4.) Third, he says that none of the violations implicate public safety and are not the type of conduct that Congress intended to target with the Gun Control Act. *Id.* at 5. Fourth, he argues that ATF erroneously counted two violations in its March 2003 investigation report and indicated that "no further action" would be taken in pursuit of those

Case No. 5:05-MC-0083
Gwin, J.

violations. (Pet. 3; Pet. Reply Br. 3-4.) Finally, he challenges the decision on constitutional grounds. The Court addresses each of these claims in turn.

**A. Willful Conduct**

The Petitioner argues that *Rich v. United States*, 383 F. Supp. 797 (S.D. Ohio 1974), properly interprets the GCA's willfulness requirement. He argues that both the *Rich* court and Congress, in passing the Firearm Owners' Protection Act ("FOPA"),[2] required actual intent to violate the statute as necessary to find willfulness. The *Rich* court defined willful as "purposeful, intentional conduct . . . rather than mere negligence." 383 F. Supp. at 800-01. Using that standard, the court found against the ATF when it revoked a seller's license without notifying the licensee of why it was doing so for the licensee's first cited infraction. *Id.* Additionally, the Petitioner interprets the *Rich* court's concern about overly broad application of the statute to require "actual intent" as a prerequisite to willfulness. [Doc. 11 6]. *See Rich*, 383 F. Supp. at 799. The Petitioner argues that later jurisprudence defining willfulness as, among other things, "indifferen[ce] to known legal obligations"[3] is inconsistent with Congressional intent and inappropriate. (Pet. Reply Br. 10-11.)

The Sixth Circuit, however, has explicitly held that if a licensee understands his or her legal obligations under the GCA, failure to discharge those obligations is willful and revocation is authorized. *Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004) ("[W]here a licensee understands his or her legal obligations under the GCA, yet fails to abide by those obligations, his or her license can be denied or revoked on the basis that the dealer "willfully" violated the GCA."). The Petitioner claims that *Appalachian Resources* should not control this case

---

[2] Congress passed FOPA in 1986 to amend the GCA. Pub. L. 99-308 (1986). The current GCA, 18 U.S.C. §§ 921, *et seq.*, includes the amendments.

[3] *See, e.g.*,*Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 415 F.3d 1274, 1276 (11th Cir. 2005).

-6-

Case No. 5:05-MC-0083
Gwin, J.

because *Appalachian Resources* is not consistent with *Rich* or with Congress' intent.

But *Appalachian Resources* controls this Court, not *Rich*, a district court decision reached thirty years before *Appalachian Resources*.  The Court, therefore, applies *Appalachian Resources*' interpretation of willfulness.[4]  Moreover, the Supreme Court has affirmed similar readings, holding that nothing in the GCA or the FOPA precludes courts from defining wilfulness to include indifference toward a known legal duty.  *Bryan v. United States*, 524 U.S. 184, 196-99 (1998).  The Court therefore rejects the Petitioner's interpretation of willfulness.  The Court follows *Appalachian Resources* and  interprets willfulness under the GCA to mean "disregard of a known legal obligation."  387 F.3d at 465.[5]

The Petitioner argues that his record keeping violations were not willful because he acted neither intentionally nor with indifference toward the GCA's requirements, but that he only committed inadvertent violations of "picayune and hyper technical" requirements.  (Pet. Reply Br. 8.)  However, the Petitioner does not dispute that the ATF consistently warned him about the particular record keeping violations, and that he continued to repeat the same violations over the course of his two decades in business.  The Petitioner was aware of the fact that his record keeping practices regularly violated GCA requirements, and he has submitted no evidence of procedures that he implemented to fix them.  Applying the standard discussed above, the Court finds that ATF was

---

[4] The Petitioner inexplicably argues that the definition of willfulness used in *Appalachian Resources* and similar case law in other circuits was "intended to be overruled by [FOPA]."  (Pet. Reply Br. 11 note 3.)  In so doing, the Petitioner argues that modern jurisprudence relies on pre-1986 case law which Congress intended to refute in passing the FOPA.  *Id.*  The Petitioner provides no further support for this contention.

[5] Contrary to the Petitioner's contentions, the Sixth Circuit's and this Court's interpretation of willfulness is consistent with Congress' intent in enacting FOPA.  Congress discussed willfulness as conduct "intentionally undertaken in violation of a known legal duty," and found violations "due to a mistake of law or fact or due to negligence on the part of the licensee" not worthy of revocation.  S. Rep. No. 476, 97th Congress, 2d Sess. 22 (1982); H. Rep. No. 495, 99th Congress, 2d Sess. 8-9 (1986).  The generally accepted definition of willfulness, which this Court now employs, falls squarely within these concepts.

-7-

Case No. 5:05-MC-0083
Gwin, J.

authorized to find that Petitioner "disregard[ed] . . . a known legal duty," and therefore willfully violated the GCA.

**B. Common Problems with the Forms**

The Petitioner also alleges that the required forms were confusing and that "virtually every gun dealer" completes them incorrectly. (Pet. Reply Br. 3-4.) However, ATF agents were available to discuss the licensing requirements to facilitate compliance. The Petitioner declined to do so. In light of this, the Court affords little weight to the Petitioner's complaint that the forms were too complicated or confusing to follow. Additionally, the Petitioner's arguments about other firearms dealers sharing his record-keeping problems are irrelevant even if cognizable evidence supported this argument.. There is no provision in the GCA or in any case law that excuses noncompliance due to others' difficulty with compliance, however ubiquitous.

**C. Public Safety**

The Petitioner also alleges that none of his violations affects the public safety, and therefore Congress did not intend such violations to form the basis for license revocation. However, as with his prior argument, this is irrelevant to the revocation inquiry.

Moreover, the Petitioner is not a proper arbiter of what conduct implicates the public safety. The very purpose of ATF and other regulatory agencies is to execute programs that protect the public welfare. ATF Deputy Assistant Director Audrey Stucko testified before the House Committee on the Judiciary that the "enforcement efforts in inspecting [firearms sales licenses] are a valuable tool in protecting our communities. The commodities in which these businesses are dealing in [sic] are not ordinary products . . . . If ever there was a business where extraordinary diligence is required, it is a firearms business." *Oversight of the Bureau of Alcohol, Tobacco, Firearms, and Explosives: Reforming Licensing and Enforcement Authorities: Hearing Before the*

Case No. 5:05-MC-0083
Gwin, J.

*House Committee on the Judiciary, Subcommittee on Crime, Terrorism, and Homeland Security*, 108th Congress, 6 (2006) (statement of Audrey Stucko, Deputy Assistant Director, Enforcement Programs and Services, Bureau of Alcohol, Tobacco, Firearms, and Explosives). ATF requires such diligence in all aspects of transferring firearms, including tracking mechanisms. The Petitioner is not empowered to pass judgment on the importance of the regulated procedures or is he situated to deny that their purpose is, at least in part, to enable government and law enforcement officials to protect the public against violent crime.

**D. Factual Challenge**

The Petitioner admits that there were a number of record keeping violations at the March 2003 inspection, but he challenges the number of cited violations. (Pet. 3; Pet. Reply Br. 3-4.) He does not challenge the findings of the earlier inspections. He also claims that he fixed the problems noted in the investigation report shortly after the ATF agents called them to his attention. Significantly, the Petitioner does not challenge the fact that he violated the same regulations on numerous occasions. These repeated violations support the authority the Attorney General used in revoking the Petitioner's license. ATF was therefore authorized to find the violations willful and authorize license revocation. The fact that the Petitioner fixed his records quickly thereafter does not change this.

Additionally, the Petitioner claims that he was entitled to rely on the fact that the ATF agents included the phrase "no further action" on the write-up after the March 2003 inspection. (Pet. Reply Br. 2.) The Petitioner claims that the statement protected him against later ATF actions. *Id.* However, the inspection officers have no discretion over revocation procedures, so their statements are not binding. Only the Director of Industry Operations may determine when and whether to revoke a license for failure to comply with the GCA. 27 C.F.R. § 478.73(a) (2006). The Petitioner's

Case No. 5:05-MC-0083
Gwin, J.

claims on this issue are therefore unavailing.

For all of these reasons, the Court finds that the Petitioner's actions in violating his recording obligations were willful and unjustified. ATF was therefore clearly within its authority to revoke his sales license.

**E. Constitutional Claims**

The Petitioner also argues that, because he substantially complied with the GCA's requirements, ATF's actions to revoke his license constituted a regulatory taking and a deprivation of Due Process in violation of the Fifth and Fourteenth Amendments. (Pet. 6.) Because the Court finds that the Petitioner did not fulfill his record keeping obligations and thereby justified ATF's actions, the constitutional claim is meritless.

### IV. Conclusion

For the above reasons, the Court holds that ATF was authorized to revoke the Petitioner's firearms sales license. The Court also finds that the Petitioner has failed to allege a genuine issue of material fact to pursue at a hearing. Accordingly, the Court **DENIES** the petition and **GRANTS** ATF's motion for summary judgment. In addition, the Court **DENIES** as moot both ATF's motion

Case No. 5:05-MC-0083
Gwin, J.

to strike the Petitioner's June 8, 2006 submission [Doc. 13] and the Petitioner's January 4, 2006 motion [Doc. 4].

      IT IS SO ORDERED.


Dated: July 25, 2006            s/ *James S. Gwin*
                                                             JAMES S. GWIN
                                                             UNITED STATES DISTRICT JUDGE